**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PATRICIA S. CERRITO,

    Plaintiff,

v.                                                    Case No. 08-14628

THE CHARTER TOWNSHIP OF CLINTON,
OFFICER JAMES GILCHRIST,

    Defendants.

_____/

### OPINION AND ORDER DISMISSING PLAINTIFF'S STATE LAW CLAIMS

Pending before the court is Plaintiff Patricia S. Cerrito's complaint, which alleges:

•      Count I: "Violation of Right Against Unreasonable Search and Seizure Under the Fourth Amendment to the United States Constitution";

•      Count II: "Violation of Right Against Unreasonable Search and Seizure Under Art. I, § 11 of the Michigan Constitution";

•      Count III: "Deprivation of Liberty without Due Process in Violation of the Fourteenth Amendment to the United States Constitution";

•      Count IV: "Violation of Constitutional Rights to Familial Integrity";

•      Count V: "Gross Negligence"; and

•      Count VI: "Negligence."

Only Counts I, III, and IV state claims under federal law; the other three counts allege claims under state law.

As a preliminary matter, the court has original jurisdiction over Plaintiff's § 1983 claims (Counts I, III, and IV). 28 U.S.C. § 1331. Because Plaintiff's state law claims arise out of the same incident and share a common nucleus of operative fact, the court could exercise its supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367. However, the court now considers if granting supplemental jurisdiction is in the interest of judicial economy, convenience, fairness, and comity. The court determines that it is not and will dismiss Plaintiff's state law claims.

## I. BACKGROUND

Plaintiff alleges that on November 3, 2006, she reported to police that a larceny of prescription medication and currency had occurred at her residence. Defendant Officer James Gilchrist arrived at Plaintiff's residence to investigate. Plaintiff alleges that Defendant Gilchrist accused Plaintiff's son Stephen A. Donovan of the larceny, and Defendant Gilchrist subsequently arrested Donovan on the basis of an outstanding bench warrant on an unrelated matter. Plaintiff alleges that after leaving her home, Defendant Gilchrist later returned to Plaintiff's home, forced his way inside the residence, physically and verbally assaulted Plaintiff, and proceeded to conduct a warrantless search of Plaintiff's home.

## II. DISCUSSION

Plaintiff brings state law claims for an illegal search and seizure under the Michigan Constitution, gross negligence, and negligence against Defendants James Gilchrist, Clinton Township, and Clinton Township Police Department. A district court has the power to dismiss or remand claims *sua sponte* for lack of subject matter

jurisdiction.  *See, e.g., Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir.

1998).  A district court has original jurisdiction over claims under either federal question

jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. §

1332.  In some circumstances, additional claims alleging violations of only state law

may be heard under the supplemental jurisdiction granted pursuant to 28 U.S.C. §

1367.

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the Supreme

Court broadly authorized federal courts to assert jurisdiction over state law claims when

there existed a "common nucleus of operative fact" compromising "but one

constitutional 'case,'" so long as the court had original jurisdiction over at least one

claim.  *Gibbs*, 383 U.S. at 725.  While this decision granted district courts broad power

over pendent state claims, it also recognized discretion in hearing such claims: "pendent

jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in

considerations of judicial economy, convenience and fairness to litigants; if these are

not present a federal court should hesitate to exercise jurisdiction over the state claims .

. . ."  *Id.* at 726.  The Court stated that pendent party jurisdiction may be denied "if the

federal claims are dismissed before trial," if "it appears that the state issues substantially

predominate," or "if the likelihood of jury confusion" would be strong without separation

of the claims.  *Id.* at 726-27.

Congress later codified the power of a federal court to hear state claims.  28

U.S.C. § 1367.  Similar to the standards articulated in *Gibbs*, the statute recognizes a

court's discretion to decline to exercise supplemental jurisdiction if:

(1)  the claim raises a novel or complex issue of State law,

(2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)  the district court has dismissed all claims over which it has original jurisdiction,

(4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* Subsections two and four are applicable to the case at bar.

Though § 1367 technically superseded *Gibbs*, courts agree that "the exercise of discretion . . . is still informed by whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodating' the values of 'economy, convenience, fairness and comity.'" *Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also* H.R. REP. NO. 101-734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 (indicating that, under *Gibbs* and "current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case-specific analysis").

## A. DISMISSAL PURSUANT TO 28 U.S.C. § 1367(c)(4)

A district court may deny supplemental jurisdiction pursuant to § 1367(c)(4) if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). "Congress's use of the word 'other' to modify 'compelling reasons' indicates that what ought to qualify as 'compelling reasons' for declining jurisdiction under subsection (c)(4) should be of the same nature as the reasons that gave rise to the categories listed in subsections (c)(1)-(3)." *Executive Software*, 24 F.3d at 1557. Once the court decides that there are compelling reasons to

decline jurisdiction, the factors that inform this decision usually will demonstrate how the circumstances confronted are "exceptional." *Id.* at 1558.

### 1. "Compelling Reasons" for Dismissing Plaintiff's State Law Claims

Courts generally accept that "compelling reasons for the purposes of [§ 1367] (c)(4) . . . should be those that lead a court to conclude that declining jurisdiction best accommodates the values of economy, convenience, fairness and comity." *Id.* at 1557 (internal citations omitted); *see also Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994). When deciding whether to agree or decline to exercise jurisdiction over supplemental state claims, the court considers the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims (including the possibility of jury confusion).

Litigation in federal court that mixes federal law claims with supplemental state law claims can cause procedural and substantive problems; in the interests of judicial economy and convenience, these problems should be avoided. *Id.* Even where, as in the present case, the federal and state claims arise out of the same factual background, the simultaneous litigation of such claims may prolong pre-trial practice, complicate the trial, lengthen and make more complex the jury instructions leading to potential confusion of the jury, result in inconsistent verdicts and cause post-trial problems with respect to judgment interest and the availability of prevailing party attorney fees. Consequently, the apparent judicial economy and convenience to the parties of a court exercising supplemental jurisdiction over state claims may be substantially offset by problems simultaneously created. The court will review the federal and state claims in

some detail to determine if supplemental jurisdiction should be exercised over the state claims.

### a. Applicable Legal Standards

The federal standard for evaluating whether excessive force was used by police officers is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal citations omitted); *see also Saucier v. Katz*, 533 U.S. 194, 210 (2001).

Plaintiff's equivalent state law claims, on the other hand, focus almost entirely on the failure of Defendants Clinton Township and Clinton Township Police Department to properly train Defendant Gilchrist. These claims are governed by state law, and the standards for proving a claim will vary from the standards of the federal claims against the individual defendant. Exercising supplemental jurisdiction over the state law claims would require additional testimony, evidence, and a probing into a Defendants Clinton Township and Clinton Township Police Department training of Defendant Gilchrist. Additionally, the state law claims would require a jury to understand, distinguish, and apply two distinct standards of reasonableness in the same case. This would certainly result in more lengthy jury instructions, jury confusion, and inconvenience to the parties that would not be present if the claims were tried separately.

### b. Immunity

Plaintiff's state and federal law claims also apply different versions of immunity, a further complication to their being tried together. Under federal law, "government officials performing discretionary functions generally are granted a qualified immunity

and are 'shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)).  In determining if a government official is entitled to such

qualified immunity, a court must first determine if a federal right was violated and, if so,

whether that right was "so clearly established that a reasonable official would

understand that his particular conduct would violate that right."  *Wilkins v. City of Royal*

*Oak*, No. 04-73276, 2005 U.S. Dist. LEXIS 42474, at * 26 (E.D. Mich. August 17, 2005).

A court must also determine if the officer was performing a discretionary function at the

time.  *Id.*  This immunity is relatively straightforward and turns on the objective

reasonableness of the official's actions.  *See generally Harlow*, 457 U.S. 800.

Immunity under state law is remarkably different. as it applies a *subjective*

standard of review to the official's actions.  Michigan statutory law shields "a

governmental agency . . . from tort liability if the agency is engaged in the exercise or

discharge or a governmental function."  Mich. Comp. Laws § 691.1407(1).

To further complicate the matter, application of this immunity is not a

straightforward process:

> Governmental immunity [under Michigan law] has been, at best, a
> confusing area of the law for the bench and bar of our state for many
> years and, unfortunately, attempts to explain it have often resulted in
> increasing the quagmire in which we collectively have found ourselves on
> this subject.

*Sudul,* 562 N.W.2d 478, 490 (Mich. Ct. App. 1997) (Murphy, J., dissenting).  The

differences in the applicability of governmental immunity between Plaintiff's federal and

state claims, as well as the "quagmire" that has evolved regarding the application of

such immunity to state claims under Michigan law, are additional factors that would complicate the simultaneous trial of federal claims, confuse the jury, and inconvenience the parties.

### c. Vicarious Liability

Another area of conflict between the federal and state claims in the present issue involves the question of vicarious liability.  The law of municipal liability under § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny.  Under this line of cases, "the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." *Monell*, 436 U.S. at 662 n.7.  Rather, municipal liability depends upon whether "someone in a supervisory capacity . . . at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employee." *Sudul*, 562 N.W.2d at 482.

In Michigan, the law of municipal liability is markedly different from that under § 1983.  Unlike federal municipal liability, which examines whether the municipality authorized or acquiesced in the alleged conduct, state liability is precluded by the immunity statute, Mich. Comp. Laws § 691.1407, which states: "a governmental agency is immune from tort liability if the agency is engaged in the exercise or discharge or a governmental function."  Mich. Comp. Laws § 691.1407(1).  Under the statute, a municipality can only be held liable "with respect to providing medical care or treatment to a patient."  Mich. Comp. Laws § 691.1407(4).

Under the Michigan provision, municipalities enjoy broad immunity and there is no question as to any authorization or acquiescence.  As such, a municipality could be

held liable only under the federal claim. This dichotomy would likely confuse the jury, and could reasonably lead to a verdict that exonerates the governmental agency from § 1983 liability simply because it cannot be liable for the state tort actions. Such a result would be contrary to the interest of justice.

### d. Recoverable Damages

Recoverable damages are drastically different as to Plaintiff's federal and state claims. Under federal law, a successful § 1983 Plaintiff may recover punitive damages against individual defendants. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). In direct contrast, "[i]n Michigan, the courts . . . refuse to allow the recovery of punitive damages." *Fellows v. Superior Prods. Co.*, 506 N.W.2d 534, 536 (Mich. Ct. App. 1993) (quoting *In re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 805 (E.D. Mich. 1989)). As a result, Plaintiff would be entitled to seek punitive damages against the officers for his § 1983 claims but not for the remainder of his claims.

Punitive damages, by definition, "are not intended to compensate the injured party, but rather to punish the tortfeasor." *City of Newport*, 453 U.S. at 266. The jury would be instructed that they *are* permitted to "punish" for an egregious Fourth Amendment excessive force violation but that they are *not* so permitted for even an obvious violation of state assault and battery law, gross negligence, or intentional infliction of emotional distress. This difference could easily lead to an artificially – and unfairly – high award for a proven § 1983 claim in order to "compensate" for the jury's inability to award punitive damages for the state law claims. It could also result in an unfairly low award if the jury were to incorrectly conclude that, since Michigan law does not permit punitive damages, the proven federal claim is not deserving of such an award

9

either. In either scenario, the different treatment of punitive damages under state and federal law could result in jury confusion, lengthy jury instructions, and an unfair verdict.

### e. Compelling Reasons Exist to Dismiss Plaintiff's State Claims

The potential for jury confusion has been identified as a compelling reason for a district court to decline to exercise supplemental jurisdiction. *Gibbs*, 383 U.S. at 727; *Barbetta v. Chemlawn Services Corp.*, 669 F. Supp. 569, 571 (W.D.N.Y. 1987); *Gasque v. King*, No. 90-00470, 1991 U.S. Dist. LEXIS 19260, at *5-6 (M.D.N.C. 1991); *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994); *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 952 F. Supp. 1399, 1404 (D. Neb. 1997); *see also* Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 3567.1, n. 46. (2d ed. 1984). In considering this potential, as well as the interests of economy, convenience, fairness, and comity, the court finds that the state claims should be dismissed. To exercise supplemental jurisdiction over these claims would result in confusion, inconvenience and potentially unfair results given the systematic disparity between these claims, including their various legal standards, available defenses, potential immunity from suit, potential vicarious liability and potentially recoverable damages. Therefore, the court will dismiss without prejudice the state law claims for an illegal search and seizure under the Michigan Constitution, gross negligence, and negligence.

### 2. This case presents "Exceptional Circumstances"

Courts must ensure that the reasons for declining to exercise supplemental jurisdiction identified as "compelling" are not deployed in circumstances that are not

10

"exceptional." *Executive Software*, 24 F.3d at 1558. Courts agree that the inclusion of

the phrase "exceptional circumstances" limits the broad discretion that district courts

once entertained under *Gibbs* to deny supplemental jurisdiction in any case. *See, e.g.,*

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir.

1998); *Executive Software*, 24 F.3d at 1558. However, Congress only "sounded a note

of caution" and did not restrict a district court's ability to dismiss claims only in cases

that were "ridiculous" or "impractical." *Executive Software*, 24 F.3d at 1558, 1560 (citing

*Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) (holding that exceptional

circumstances were present when parallel state proceedings were underway and

therefore the adjudication of state claims would be a "waste of judicial resources.")).

The court finds that exceptional circumstances are present in this case in

weighing the likelihood of jury confusion, judicial inefficiency, substantial inconvenience

to the parties, and potential unfairness in outcome which could readily result by

attempting to resolve all claims in a single trial. Though there would be some

duplication of effort required by Plaintiff and Defendants in this case if Plaintiff decides

to pursue both claims, the court finds that any advantages to be gained by trying all

claims together are outweighed by the potential for confusion of the issues, legal

theories, defenses, and possible relief. Thus, the court will not exercise supplemental

jurisdiction and will dismiss without prejudice Plaintiff's state law claims for an illegal

search and seizure under the Michigan Constitution, gross negligence, and negligence.

## B. DISMISSAL PURSUANT TO 28 U.S.C. § 1367(c)(2)

Separately, a district court may decline the exercise of supplemental jurisdiction

pursuant to section 1367(c)(2) if "the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(4). As already discussed in detail, the state claims presented here implicate myriad problems including the need to introduce evidence inapplicable to – indeed inconsistent with – the evidence relevant to the federal claim, additional witnesses, disparate legal theories on both claims and defenses and significantly expanded and contradictory jury instructions. The court finds that the state claims presented in this case would, for these reasons, predominate over the § 1983 federal claim over which the court has original jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(2), the court will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

## III. CONCLUSION

For the reasons stated above, IT IS ORDERED that all of Plaintiff's state law claims including, without limitation, claims of illegal search and seizure under the Michigan Constitution (Count II), claims of gross negligence (Count V) and claims of negligence (Count VI), are hereby DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that only Plaintiff's claims arising under federal law, 42 U.S.C. § 1983, as violations of the United States Constitution (Counts I, III, and IV) now remain before this court.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 19, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 19, 2008, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522